AUSA: JOE ZABEL

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **25 MAG 1440** |
| UNITED STATES OF AMERICA<br><br>v.<br><br>NICHOLAS ALCANTARA,<br><br>Defendant. | <u>**SEALED COMPLAINT**</u><br><br>Violations of 18 U.S.C. §§ 1951, 924(c)(1)(A)(i) and (ii)<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

     JENNIFER CARDILLO, being duly sworn, deposes and says that she is a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and charges as follows:

<u>**COUNT ONE**</u>
**(Hobbs Act Robbery)**

     1.     On or about February 5, 2025, in the Southern District of New York and elsewhere, NICHOLAS ALCANTARA, the defendant, knowingly committed robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, ALCANTARA robbed at gunpoint a gas station in the vicinity of Jerome Avenue in the Bronx, New York.

(Title 18, United States Code, Section 1951.)

<u>**COUNT TWO**</u>
(**Hobbs Act Robbery**)

     2.     On or about February 5, 2025 in the Southern District of New York and elsewhere, NICHOLAS ALCANTARA, the defendant, knowingly attempted to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and thereby to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, ALCANTARA attempted to rob at gunpoint a commercial parking lot in the vicinity of Jerome Avenue in the Bronx, New York.

(Title 18, United States Code, Section 1951.)

<u>**COUNT THREE**</u>
**(Firearms Use, Carrying, and Possession)**

     3.     On or about February 5, 2025, in the Southern District of New York and elsewhere, NICHOLAS ALCANTARA, the defendant, during and in relation to a crime of violence for which

he may be prosecuted in a court of the United States, namely, the Hobbs Act robbery charged in Count One of this Complaint, knowingly used and carried a firearm, and in furtherance of such crime, possessed a firearm, which was brandished.

(Title 18, United States Code, Section 924(c)(1)(A)(i) and (ii).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with ATF and have been involved in the investigation of this matter. I base this affidavit on my own personal experience investigating crimes involving firearms and robberies; my conversations with other law enforcement personnel; my review of interview notes; and my examination of various reports, recordings, photographs, records, and videos, including closed-circuit surveillance footage. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### NICHOLAS ALCANTARA's Armed Robberies

5. Based on my conversations with law enforcement officers, and my review of records and reports, including surveillance footage, I know that on or about February 5, 2025, NICHOLAS ALCANTARA, the defendant, committed one armed robbery, and attempted to commit another, in the vicinity of Jerome Avenue in the Bronx, New York. In particular, I have learned the following, in substance and in part:

a. On or about February 5, 2025, at approximately 6:56 p.m., in the vicinity of Jerome Avenue in the Bronx, New York, a male individual—identified, as described below, as ALCANTARA—was captured on security camera footage at a deli ("Location-1") wearing a dark gray hooded sweatshirt with a distinctive zipper pocket on the left sleeve, dark gray pants, and red underwear. The individual remained in the deli for approximately one hour. During this time, the individual used a debit card to make a purchase. Still images from security camera footage within the deli showing the individual are reproduced below.



b. Surveillance cameras from directly outside Location-1 revealed the presence of a white Mercedes Benz sedan, which was later determined to bear a particular Connecticut license plate ("Vehicle-1"), *see infra*, at approximately the same time the individual entered the deli. A still photo from surveillance cameras showing an individual exiting Vehicle-1, to his left, and entering Location-1, to his right, is reproduced below, with a blue oval added around the individual.



c. On or about February 5, 2025, at approximately 8:24 p.m., the same individual entered a gas station also in the vicinity of Jerome Avenue in the Bronx, New York ("Location-

3

2"). Employees at Location-2 reported to law enforcement, in substance and in part, that the individual walked behind the counter of the cashier area, displayed a firearm, pulled back and released the slide of the firearm so that it was ready to fire, and demanded that money be placed in a bag. One employee of Location-2 then placed approximately $300 in a bag and handed it over to the individual. Upon exiting Location-2, the individual entered a white Mercedes Benz four-door sedan. Surveillance footage from within Location-2 shows the individual wearing the same clothing that he was wearing at Location-1, but now with a white face covering. Additional still photos of surveillance footage from the street near Location-2 reveal a white Mercedes Benz sedan driving toward Location-2, and then double parking across the street from Location-2. In each photo, the white Mercedes Benz sedan is highlighted with a blue oval.







    d. On or about February 5, 2025, at approximately 8:57 p.m., the same individual approached an employee at a commercial parking lot also in the vicinity of Jerome Avenue in the Bronx, New York ("Location-3"). The employee reported, in substance and in part, that the individual parked his vehicle at the lot and inquired about the parking fee. As the employee began walking toward the parking lot's office, the individual approached the employee from behind, displayed a firearm, pointed it at the employee's side, and demanded the employee's belongings. The employee proceeded to empty his pockets. The individual then demanded to know the location of the safe. The employee showed the individual where the safe was located. The individual subsequently discharged his weapon approximately three times in an attempt to open the safe but was unsuccessful and was, therefore, unable to remove any money from Location-3. Law enforcement officers recovered two 9-millimeter shell casings and six bullet fragments from the scene. Surveillance footage from Location-3 shows the individual exiting Vehicle-1 wearing the same clothing that he was wearing at Location-1 and Location-2, and brandishing a weapon (circled in red) at Location-3.







Identification of NICHOLAS ALCANTARA

6. Based on my review of bank records, cell site location information, vehicle registration documents, social media profiles, employment records, surveillance footage, and witness interviews, I have learned the following, in substance and in part:

a. Law enforcement obtained records from Location-1 providing information about the debit card used by the individual, which was determined to be a debit card associated with a particular bank (the "Bank"). Records from the Bank revealed the card was registered to NICHOLAS ALCANTARA, the defendant, at an address in Bushkill, Pennsylvania ("Address-1"). These records also confirmed that a purchase was made on or about February 5, 2025, at Location-1.

b. I have also learned from law enforcement records that ALCANTARA got into a car accident on or about October 1, 2024 and provided law with a particular phone number (the "ALCANTARA Phone") as the best number at which to contact him.

c. On or about April 3, 2025, law enforcement obtained a warrant and order for prospective and historical location information and pen register information for the ALCANTARA Phone. Materials obtained from that warrant revealed that on or about February 5, 2025, at approximately 7:50 p.m., the ALCANTARA Phone connected to a tower in the vicinity of Location-1 and connected to a tower in the vicinity of both robbery locations (*i.e.*, Locations-2

7

and -3) shortly thereafter. After the robberies, beginning at approximately 9:15 p.m. on or about February 5, 2025, cell site location information data showed the ALCANTARA Phone was pinging near Address-1, in Pennsylvania. The ALCANTARA Phone continues to ping on a regular basis near Address-1.

         d.     Law enforcement obtained DMV records for the license plate number on Vehicle-1, which show that Vehicle-1 is registered to ALCANTARA. Additionally, records from an automobile dealership (the "Dealership") indicate that ALCANTARA purchased Vehicle-1 in 2021.

         e.     Law enforcement agents conducted surveillance on or about February 23, 2025, at Address-1 and located a white sedan covered in a gray tarp in the driveway of Address-1 with rims that appear to match those of Vehicle-1, based on law enforcement's observations of the Vehicle-1 outside Location-1. Law enforcement agents conducted further surveillance at Address-1 on or about April 25, 2025 and identified an individual there who resembled the individual captured in the surveillance footage from Location-1, Location-2, and Location-3. An image showing Vehicle-1 at Address-1 is reproduced below.



         f.     Records from a social media company show that there is a "NICHOLAS ALCANTARA" who is originally from the Bronx, New York, who works at a particular company (the "Company"), and who, based on comparing his appearance in his social media profile with the surveillance footage described above, appears to be the same individual captured in the surveillance footage from Location-1, Location-2, and Location-3.

g. Records from the Bank and from the Dealership confirm that ALCANTARA is employed by the Company. Records obtained from the Company confirm that ALCANTARA's phone number is, in fact, the ALCANTARA Phone. Records from the service provider of the ALCANTARA Phone confirm that the ALCANTARA Phone is subscribed to the Company.

7. Based on all of the evidence outlined above, including but not limited to: (1) the debit card record linking NICHOLAS ALCANTARA, the defendant, to Location-1 at the time immediately preceding the robberies; (2) cell site data showing the ALCANTARA Phone in the vicinity of all three locations during the times of the incidents; (3) vehicle registration and surveillance footage connecting Vehicle-1 to all three locations; (4) the matching clothing worn by the individual at all three locations; and (5) ALCANTARA's confirmed connection to the ALCANTARA Phone and to Vehicle-1, which was used during the commission of these crimes, I believe that ALCANTARA is the individual who committed the armed robbery at Location-2 and the attempted armed robbery at Location-3 on or about February 5, 2025.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of NICHOLAS ALCANTARA, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

s/ Jennifer Cardillo /otw
Jennifer Cardillo
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), pursuant to Federal Rule of Criminal Procedure 4.1,
this 30th day of April, 2025.

THE HONORABLE ONA T. WANG
United States Magistrate Judge
Southern District of New York

9